## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GOODSPEED AIRPORT LLC, ET AL. | : | |
| Plaintiffs | : | |
| | : | CIVIL NO. 3:01CV403 (SRU) |
| VS. | : | |
| | : | |
| EAST HADDAM LAND TRUST, INC., ET AL. | : | |
| | : | |
| Defendants | : | MARCH 5, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SUSAN MERROW AND JAMES VENTRES' MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

On October 22, 2001, this Court dismissed the plaintiffs' complaint without prejudice to the plaintiffs filing an amended complaint "that states a viable Section 1983 procedural due process claim." See, Ruling and Order re: The Defendants' Motions to Dismiss dated October 22, 2001 (the "Ruling"). The plaintiffs filed an Amended Complaint dated November 6, 2001 which purports to add both a substantive due process claim and a procedural due process claim. The defendants then filed a second motion to dismiss which was denied by this Court on November 20, 2002. "I'm concerned about this case because it's hanging in federal court by its fingernails, quite frankly, and yet at least in the broadest sense I think these claims have been pled in the complaint. . . . In terms of the motions to dismiss, I'm going to deny them largely

1

because of the very high standard on a 12 (b) (6) motion. . . . I'm going to in effect order there be

a limited period of discovery to conduct no more than three depositions per side in aid of making

a motion for summary judgment." (Transcript 11/20/02, pp. 45-51, Judge Underhill, Copy

attached)

**FACTS**

The East Haddam Land Trust (EHLT) owns land between the southern end of the

plaintiffs' airport known as the Goodspeed Airport and other land owned by the Nature

Conservancy along the Connecticut River. ( Fact # 3)  The EHLT property contains wetlands in

an environmentally sensitive area known as "Chapman's Pond".  (Fact # 4 and 5)  In December,

2000, the plaintiffs, acting through their agents and without the permission of the EHLT, entered

these wetlands and cut down acres of trees and vegetation.  (Fact # 6 and 7)  The cutting was

done without obtaining permits from the Town of East Haddam Inland Wetlands and

Watercourse Commission (IWWC) and without obtaining a court order.  (Fact # 8)  The

plaintiffs continue to operate their airport unimpeded and undeterred by any actions of the

defendants or the Town of East Haddam.  (Fact # 14)

The plaintiffs allege that they have the right to use their property as an airport and that

they have the right to enter onto land of the East Haddam Land Trust (EHLT) to remove trees

and vegetation in wetlands in order to protect "their property right to continue to operate the

Goodspeed Airport".  (Amend. Compl. ¶ 48).   The Amended Complaint alleges that "if the

plaintiffs did not cut and trim the trees on . . . the EHLT realty . . . then the plaintiffs would have to substantially curtail and eventually close the Goodspeed Airport." (Amend. Compl. ¶ 47) Although there is no allegation that the Goodspeed Airport operations have been curtailed, the plaintiffs allege that the defendants are engaged in a conspiracy to interfere with airport safety and the plaintiffs' "property right to a prescriptive easement to cut and trim trees on a portion of the EHLT land". (Amend. Compl. ¶ 48)

There are allegations in the Amended Complaint against Susan Merrow, First Selectman of the Town of East Haddam that she complained about and allegedly made inappropriate statements about the plaintiffs and their actions in retaliation for the plaintiffs' refusal to cooperate in the expansion of the Goodspeed Opera House. (Amend. Compl. ¶¶ 25, 26, 43, 64 and 68) There also are allegations against James Ventres, Enforcement Officer for the IWWC, that he made false or misleading statements to induce the IWWC to take action against the plaintiffs. (Amend. Compl. ¶¶ 49, 51, 57, 58, 59, 61, 62, 63 and 67)

The plaintiffs acknowledge that they went forward and cut trees on EHLT property without permission, without permits and without a court order. (Amend. Compl. ¶ 48; Facts # 7, 8 &9) The only harm alleged arises from the fact that the defendants have sought and continue to seek redress for the wetlands violations under state law and town regulations but there is no allegation or evidence that the defendants have obtained any sort of relief or redress to date. The plaintiffs do not challenge the constitutionality of the local wetlands regulations nor is there any

3

federal law that preempts state law in this area. The plaintiffs also do not allege that they have

been deprived of their right to operate the airport nor do they allege that they have exhausted

their state law remedies attempting to protect or vindicate that right to operate.

Ventres, acting as Inland Wetlands and Watercourse Enforcement Officer, issued a cease

and desist order against the plaintiffs after he learned that the plaintiffs had cut acres of trees and

vegetation in sensitive wetlands owned by the EHLT. (Fact # 3, 4, 5, 6, 7, and 10)  The cease

and desist order issued by the defendant Ventres on January 2, 2001 ordered the plaintiffs: " 1.

To Cease and Desist from all regulated activity within seventy-five feet of inland/wetlands and

watercourses (regulated areas) on your property . . . 2.  Appear before the Inland & Wetlands and

Watercourse Commission on January 11, 2001 . . . to be heard and show cause why this order

should not remain in effect." (Fact # 2, 10)  The cease and desist order was never affirmed by the

IWWC. (Fact # 11) Instead, the IWWC authorized the institution of an enforcement action to be

brought in Superior Court. (Fact # 11)   The IWWC's enforcement action presently is being

litigated in the Superior Court for the State of Connecticut, entitled James Ventres, et al vs.

Timothy Mellon, et al, Complex Litigation Docket No. X07 CV 01-0076812 S, Judicial District

of Tolland at Rockville. (Fact # 12)

The plaintiffs acted without permission or authority of the EHLT, without required

wetlands permits and without court order. (Facts # 7, 8 &9) The plaintiffs continue to operate

their airport uninterrupted by the actions of the defendants. (Fact # 14) Whether the plaintiffs

4

will suffer penalties or restrictions in the future has yet to be determined in Superior Court.(Fact # 13)

The defendants Merrow and Ventres now move for an order of summary judgment in their favor.  If the civil rights claims are dismissed for failure to state a claim, then this court should dismiss the pendent state law claims against Ventres and Merrow for lack of subject matter jurisdiction.

## LAW AND ARGUMENT

### I. THE SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c).  As a "general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." Tomka v. Seiler, 66 F.3d 1295, 1304 (2d Cir. 1995).  "[T]he mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there would be no **genuine** issue of **material** fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

### II. PLAINTIFFS HAVE NOT BEEN DEPRIVED OF A CONSTITUTIONAL RIGHT.

To prevail on their claim that they have been deprived of their procedural due process

rights, the plaintiffs must " ' first identify a property right, second show that the state has

deprived him of that right, and third show that the deprivation was effected without due

process.'" Local 342 v. Town of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (quoting Mehta

v. Surles, 905 F.2d 595, 598 (2d Cir. 1990) (per curiam)); Hynes v. Squillace, 143 F.3d 653, 658

(2d Cir.) (per curiam), cert. denied, 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed. 2d 202 (1998). The

plaintiffs have failed this test.

First, federal law does not create a right to remove trees from the EHLT property to

protect navigable airspace.  This Court has ruled that "while the [federal] regulations impose a

burden upon plaintiffs to maintain unobstructed airspace in proximity to the runways, they do not

in any way speak to the methods by which plaintiffs are to maintain the airspace." (Ruling

10/22/01, p. 7)

Second, even assuming that the plaintiffs have the right to remove trees on EHLT

property under state law, the plaintiffs have not been deprived of that property interest because

they went ahead and cut the trees and they continue to operate their airport.  Compare, Gagliardi

v. Village of Pawling, 18 F.3d 188, 194-195 (2d Cir. 1994) (plaintiff stated a claim that officials

engaged in conspiratorial non-enforcement of laws in retaliation for plaintiff's voiced concerns

about zoning violations).

Third, even if the plaintiffs have somehow been deprived of a property interest, they are

being afforded procedural due process.  If the cease and desist order had any impact upon the

plaintiffs, they had a post-deprivation remedy in the form of an appeals process set out in

Connecticut General Statutes § 22a-43.  Furthermore, the plaintiffs are currently defending the

pending enforcement action in the Connecticut Superior Court.  See, Parratt v. Taylor, 451 U.S.

527, 538, 101 S.Ct. 1908, 68 L.Ed. 2d 420 (1981) (availability of adequate state post-deprivation

remedy satisfies procedural due process where pre-deprivation process is impractical); Brady v.

Town of Colechester, 863 F.2d 205, 211 (2d Cir. 1988) (claim of denial of permit due to political

animus in violation of state law does not implicate procedural due process because of adequate

post-deprivation process of appeal and judicial review).

Procedural due process should come into play only after this Court determines that there

has been a deprivation of liberty or property. The Court should "examine procedural due process

questions in two steps: the first asks whether there exists a liberty or property interest which has

been interfered with by the state[;] the second examines whether the procedures attendant upon

that deprivation were constitutionally sufficient." Kentucky Department of Corrections v.

Thompson, 490 U.S. 454, 460 (1989);  See also, Board of Regents v. Roth, 408 U.S. 564 (1972).

"No process is constitutionally due for the deprivation of an interest that is not of constitutional

magnitude." Kelley Property Development, Inc. v. Town of Lebanon, 226 Conn. 314, 322

(1993).

The plaintiffs have alleged no property interest nor any liberty interest of a constitutional

magnitude that has been interfered with by the defendants acting under color of state law.

Furthermore, the plaintiffs have not challenged as constitutionally deficient the procedures being

followed in the enforcement action pending in Superior Court. The plaintiffs cannot establish a

violation of their procedural due process rights.

The plaintiffs also have failed to establish a substantive due process claim. Substantive

due process limits the exercise of governmental power to what can be considered legitimate state

interests. Again, the plaintiffs must first show a deprivation of a constitutionally protected

property or liberty interest. White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061-62 (2d

Cir.), cert. denied, 510 U.S. 865 (1993); Sutton v. Village of Valley Stream, New York, 96 F.

Supp. 2d 189, 193 (E.D.N.Y. 2000). The plaintiffs have failed to allege the deprivation of a

constitutionally significant property or liberty interest. However, even assuming that the

plaintiffs have been deprived of a significant interest, their allegations do not give rise to a

substantive due process claim.

> The due process clause was intended to prevent government
> from abusing its power, or employing it as an instrument of
> oppression. The clause has been held to have a substantive
> component that protects individual liberty against certain
> government actions regardless of the fairness of the procedures
> used to implement them. The Supreme Court has warned,
> however, that it has always been reluctant to expand the
> concept of substantive due process because guideposts for
> responsible decision making in this uncharted area are scarce
> and open-ended . . . . A substantive due process claim based on
> allegedly tortious conduct by a state actor therefore ordinarily
> requires evidence of conduct that can properly be characterized
> as arbitrary, or conscience-shocking, in a constitutional sense.

Interport Pilots Agency v. Sammis, 14 F.3d 133, 144 (2d Cir. 1994) (quotations and citations omitted).

Substantive due process provides protection against governmental action that is arbitrary, conscience-shocking, or "oppressive in a constitutional sense," but not against action that is merely erroneous or ill-advised. Lowrence v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994). The Due Process Clause does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. Id. See also, Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992) (Due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes.)

None of the allegations in the Amended Complaint can be characterized as "conscience-shocking" in a constitutional sense. The undisputed facts of this case demonstrate that the plaintiffs entered EHLT property and cut trees and vegetation in wetlands without permission of the owners, without a wetlands permit from the Town of East Haddam and without a prior court order or determination of a right to so act. The facts also demonstrate that the Town of East Haddam continues to seek appropriate legal remedies for the plaintiffs' actions through litigation pending in Superior Court. Accordingly, the defendants' motion for summary judgment on the plaintiffs' constitutional claims should be granted.

**B.    THE PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.**

Pursuant to Rule 12 (b) (1) of the Federal Rules of Civil Procedure, pendent state law claims should be dismissed on the grounds that dismissal of the plaintiffs' federal claims deprives this Court of subject matter jurisdiction over the state law claims.  All state claims should be dismissed where all federal claims are dismissed before trial.  United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); A. Aiudi & Sons v. Town of Plainville, 862 F. Supp. 737, 745 (D. Conn. 1994).

**IV.    CONCLUSION**

The plaintiffs have failed to state a claim for the deprivation of their constitutional right to due process because they have failed to identify a  property or liberty right, failed to show that they have been deprived  of that right, and failed to show that the deprivation was effected without due process.  The plaintiffs also have failed to allege conduct by the defendants that may be considered "conscience-shocking" in the constitutional sense.  The plaintiffs' federal civil rights claims should be dismissed for failure to state a claim upon which relief may be granted.  The plaintiff's state common law claims should be dismissed for lack of subject matter jurisdiction.

THE DEFENDANTS,
Susan Merrow and James Ventres


By_____
    Kenneth J. McDonnell
    Gould, Larson, Bennet, Wells & McDonnell, P.C.
    35 Plains Road
    P. O. Box 959
    Essex, CT 06426
    Tel. (860) 767-9055
    Fed. Juris No. ct 06555


## CERTIFICATION

    This is to certify that a copy of the Motion for Summary Judgment, Statement of Material Facts, Affidavits of Susan Merrow and James Ventres with Exhibits and Memorandum of Law were mailed via first class mail, postage prepaid this 4th day of March, 2004, to the following counsel of record:

Timothy C. Moynahan, Esq.
Moynahan, Ruskin, Mascolo & Minnella
141 East Main Street
Waterbury, CT 06702

Michael J. Donnelly, Esq.
Murtha Cullina, LLP
CityPlace I - 185 Asylum Street
Hartford, CT 06103-3469

John R. Fornaciari, Esq.
Sheppard Mullin Richter & Hampton LLP
1300 I Street, N.W.
11th Floor East
Washington, D.C.  20005-3314


_____
Kenneth J. McDonnell

11

# COPY

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - x

GOODSPEED AIRPORT, LLC       :  No. 3:01CV-403 (SRU)
                             :  915 Lafayette Boulevard
         vs.          :  Bridgeport, Connecticut
                             :
                             :  November 20, 2002
EAST HADDAM LAND TRUST, INC.  :
ET ALS                     :

- - - - - - - - - - - - - - - x

MOTION TO DISMISS

B E F O R E:

THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

    FOR THE PLAINTIFF:

        KUTAK ROCK LLP
             1101 Connecticut Avenue, NW
             Suite 1100
             Washington, D C  20036-4374
        BY:  JOHN R. FORNACIARI, ESQ.

    FOR THE DEFENDANTS:

        MURTHA CULLINA LLP
             CityPlace 1
             185 Asylum Street
             Hartford, Connecticut  06103-3469
        BY:  MICHAEL J. DONNELLY, ESQ.

        GOULD, LARSON, BENNET, WELLS & McDONNELL
             35 Plains Road, P. O. Box 959
             Essex, Connecticut  06426
        BY:  KENNETH J. McDONNELL, ESQ.

Susan E. Catucci, RMR
Official Court Reporter
915 Lafayette Boulevard
Bridgeport, Connecticut  06604
Tel: (203) 246-6385

1                    (3:00 O'CLOCK, P. M.)

2              THE COURT:  We're here in Goodspeed Airport.

3    Why don't I get appearances, please?

4              MR. FORNACIARI:  Excuse me, Your Honor?

5         ·    THE COURT:  Appearances.

6              MR. FORNACIARI:  John Fornaciari.  I represent

7    plaintiffs.  With me is Mr. Mellon and Walter -- I can't

8    can't pronounce his last name.

9              MR. SABAROWSKI:  Sabarowski (ph).

10             MR. FORNACIARI:  From Mr. Moynahan's firm.

11             THE COURT:  Thank you.

12             MR. McDONNELL:  Kenneth McDonnell, Your Honor.

13   I represent James Ventres and Susan Merrow, defendants.

14   And this is my partner, John Bennett.

15             MR. DONNELLY:  And Michael Donnelly from Murtha

16   Culina for the remaining defendants.

17             THE COURT:  All right, thank you.  First off, my

18   apologies for how long it's taken me to get to this

19   motion.  As is my typical practice, I've gone through the

20   papers and have a good sense of the arguments and really

21   would like to start with some questions and then allow you

22   to make whatever argument you want to make from that

23   point.

24             Mr. Fornaciari, let me start with you.  I don't

25   mean to give you a hard time but I thought we were just

1    process here under the cases I've cited to you.

2             Now, if you want us to take some discovery and

3    they want to take some discovery and show that we can come

4    up with a whole bunch of things that we can't do, and they

5    make a motion, Your Honor, fine, but that's not a 12(b)(6)

6    motion, Your Honor.

7             THE COURT:  All right.

8             MR. DONNELLY:  May I clarify one piece of

9    pleading, Your Honor?

10            THE COURT:  Sure.

11            MR. DONNELLY:  As I understand the pleading, the

12   allegations are that the discussions about whether there

13   was going to be a license or an easement with respect to

14   the cutting was for a different swath of cuttings.

15            THE COURT:  That was my understanding.

16            MR. DONNELLY:  Therefore, the fee that they are

17   referring to by their pleading was not for a right he had.

18   It was for a different path.

19            THE COURT:  I understand.

20            MR. DONNELLY:  That's all, Your Honor.

21            THE COURT:  That's my understanding.  I think

22   this is what I'd like to do, and I'd like to get your

23   reaction to it.  I'm concerned about this case because

24   it's hanging in federal court by its fingernails, quite

25   frankly, and yet at least in the broadest sense I think

46

1    these claims have been pled in the complaint.  I'm going

2    to suggest that we ask the lawyers to meet and conduct

3    discovery for the purpose of determining whether or not

4    the due process claims are going to survive a dispositive

5    motion, and that we take limited discovery, we have

6    summary judgment motions directed at these claims and we

7    figure out before we get off to the races to what is

8    obviously a very ugly and nasty case, that we figure out

9    whether it should be here or should be down the street in

10   Superior Court.

11           I think the standard on a 12(b)(6) motion is

12   such that this is pretty darn close to satisfying if, it

13   doesn't satisfy it, but yet, I think much of the arguments

14   related to both sides is focused on matters that are not,

15   at least clearly or in detail, set forth in the pleadings,

16   and so it seems to me to make some sense to sort out the

17   basis for federal jurisdiction before we get wide open

18   discovery going.  Any reaction to that?

19           MR. FORNACIARI:  Your Honor, my client's been

20   trying to take discovery on this, we think, conspiracy now

21   for over a year.  I would like to take just a couple of

22   depositions.  Maybe three.

23           THE COURT:  That's what I'm talking about doing,

24   taking limited discovery.  You do what you need to get

25   done in a limited sense, let defense do what they need to

1    get done in a limited sense, and we're not talking about

2    how you read the clause in the complaint and we are

3    focused on what in fact you have been prevented from

4    doing, if anything, and are focused on more specifically

5    the procedure.

6         Presumably you can stipulate to what happened.

7    I don't think there is much dispute about what happened.

8    We can do that by stipulation and we're not limited at

9    that point to allegations.  We can get that sorted out

10   pretty quickly, and then we figure out based upon your

11   stipulated facts or affidavits whether there is a claim

12   here or not.

13        MR. FORNACIARI:  Your Honor, I would like to

14   take at least three depositions and I don't want

15   objections at the depositions to the effect, well, the

16   judge said you couldn't ask these questions, or the judge

17   said you couldn't ask those questions.  Why don't we have

18   an agreement that we can take three depositions each and

19   take them under the normal rules of discovery and let's do

20   three depositions.

21        MR. McDONNELL:  Your Honor, why can't his client

22   allege in an affidavit exactly what it was that he was

23   deprived of and how this procedure worked?  He's got a

24   copy of the cease and desist order.  Why don't we agree to

25   put the cease and desist order in?  The statutes are what

1    they are.  He doesn't need depositions.  I think we can --

2          THE COURT:  Help me to understand.  If you get

3    knocked out of the federal court --

4          MR. McDONNELL:  Right, we still have the state

5    action on the claims of trespass and his prescriptive

6    easement claims.

7          THE COURT:  And depositions are going to be

8    taken in that case.

9          MR. McDONNELL:  Right.

10          MR. DONNELLY:  But, Your Honor, there are at

11    least two, perhaps at this point three pending state court

12    cases that already exist, so to the extent we can have, by

13    affidavit put before you what plaintiffs believe they were

14    deprived of so you can decide -- with the other way, we're

15    going to have to have two sets of depositions to go over.

16    It may make more sense to me to do it once rather than

17    take six depositions that are preliminary and going to

18    have to be repeated for the state court purposes, because

19    some of the claims with different parties exist in the

20    state court.

21          MR. McDONNELL:  The State of Connecticut is in

22    the other cases.

23          THE COURT:  Well, I don't think it's too

24    difficult to get another lawyer or two to attend a

25    deposition and have an agreement that the depositions

1  taken can be used in the other cases.  It may make a lot

2  of sense to do it that way anyway.  You ought to do that

3  for all cases that are pending.  So if there are any -- if

4  you're going to have Mr. Ventres' deposition, you can get

5  Mr. Ventres' deposition once instead of four times.  Maybe

6  that makes sense.  And maybe we're talking about three

7  depositions for the defense; if the defense doesn't want

8  to take three depositions and wants to do it by way of

9  their own affidavits, I have no problem with that, but if

10  you're filing a summary judgment motion, I'm going to get

11  these motions in and the question is going to be whether I

12  can decide a summary judgment motion without allowing the

13  plaintiff to take limited discovery.  It seems to me that

14  allowing the plaintiff to take these depositions and

15  taking a summary judgment motion is about as efficient as

16  we can get in this thing.  I mean you've got the seven

17  hour rule so, you know, you're talking about two 21-hour

18  depositions, so bring it on.  Any problem with that?

19          MR. FORNACIARI:  None from me, Your Honor.  I'd

20  stipulate they can be used in any other -- Mr. Mellon will

21  stipulate they can be used in other proceedings.

22          MR. McDONNELL:  Are we limited to the federal

23  claim though, your Honor, or are we doing all state law

24  claims as well?

25          THE COURT:  Well, I mean, I think it's hard to

1  draw those lines.  If they want to use their time on

2  something which is going to have no import on substantive

3  or procedural due process, then they have an hour limit.

4  You ought to be happy about that, I would think.

5              MR. McDONNELL:  All right.

6              THE COURT:  I think it's cleaner than trying to

7  parse out which question they can ask and which they

8  can't.  All right.

9              I think you have a sense where I am.  In terms

10  of the motions to dismiss, I'm going to deny them largely

11  because of the very high standard on a 12(b)(6) motion.  I

12  have to accept as true all the pleaded allegations in the

13  complaint and view the complaint in the light most

14  favorable, favorable inferences to the plaintiff, and

15  figure out whether a jury could return a verdict in favor

16  of the plaintiff as a matter of law, and essentially using

17  that high standard I think the complaint survives.  Again,

18  it's not a comment on the strength of the complaint and I

19  think we ought to resolve that so we're not tying up this

20  court and these parties with matters that shouldn't be in

21  this court if in fact that's the way things turn out.

22              So I'm going to in effect order, although I'm

23  happy if the parties want to confer and suggest something

24  else, I'm going to in effect order there be a limited

25  period of discovery to conduct no more than three

1    depositions per side in aid of making a motion for summary

2    judgment.  I'd urge parties to either suggest deadlines or

3    at a minimum get it done as quickly as you can.  Ideally

4    I'd like to get from the parties a proposed order that

5    would suggest, whatever, so this case doesn't languish any

6    more than it has already.  If it's going to be in this

7    court, let's get it off and running.  If it isn't, let's

8    get it off to wherever it's going to be.  So I would urge,

9    ask the parties to propose deadlines for completion of

10   that limited discovery and file your dispositive motions.

11              MR. FORNACIARI:  I'll be in my office tomorrow,

12   I'll try and get in touch with defense counsel, perhaps

13   get back to you by Friday.  If we're around tomorrow, we

14   can talk.

15              THE COURT:  That's fine.  You don't need to get

16   back to me unless to the extent you have a problem, but if

17   you agree, someone ought to send in a motion for

18   scheduling order.  I'll consider it.

19              MR. FORNACIARI:  Very well.

20              THE COURT:  All right.  I thank you all.  We'll

21   stand in recess.

22              (Whereupon the above matter was adjourned at 4:30

23   o'clock, P. M.)

24

25