UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GOODSPEED AIRPORT, LLC, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:01CV403SRU |
| ) | |
| EAST HADDAM LAND TRUST, INC., *et al.* ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF PLAINTIFFS IN SUPPORT OF THEIR MOTION
FOR RECONSIDERATION OF THE COURT'S
ENTRY OF SUMMARY JUDGMENT FOR THE DEFENDANTS**

Plaintiffs Timothy Mellon and Goodspeed Airport, LLC hereby file their memorandum in support of their motion for reconsideration of the Court's entry of summary judgment for the Defendants.

**STATEMENT OF THE CASE**

The Court entered summary judgment in favor of Defendants against Plaintiffs' claims for violation of substantive due process and procedural due process on the ground that the cease and desist order ("C&D") issued against Plaintiffs did not deprive Plaintiffs of any property rights. The Court held that because the C&D merely required Plaintiffs to conduct no regulated activity without a permit from the East Haddam Inland Wetlands and Watercourse Commission ("IWWC"), the C&D merely required Plaintiffs to comply with the regulations and did not deprive Plaintiffs of property rights.

Plaintiffs respectfully assert that the Court's ruling was in error and should be reconsidered.

## ARGUMENT

### The Issuance Of A C&D Under The Facts Hereof Is A Deprivation Of Property Rights.

Many Courts have concluded that the issuance of C&D's for improper reasons deprives property owners of property rights in violation of substantive due process and procedural due process, even if the C&D requires only that Plaintiffs comply with the regulations. For example, in Zaintz v. City of Albuquerque, 739 F. Supp. 1462 (D.N.M. 1990), the Court denied summary judgment against a substantive due process claim. The plaintiffs were the owners of a teenage dance club. A city ordinance required that a permit be obtained to hold public teenage dances. 739 F. Supp. at 1465. On several occasions, the City threatened the plaintiffs with closure for operating without a permit in violation of the ordinance and informed plaintiffs by letter that they would have to terminate their teen dances until a permit was issued. After being threatened with legal action, the plaintiffs eventually applied for and obtained the required permit. The plaintiffs thereafter instituted suit against the City for violation of substantive due process, alleging that the City deprived the plaintiffs of their property without due process of law by arbitrarily and capriciously requiring plaintiffs to obtain a permit and comply with the ordinance for improper motives in order to benefit plaintiffs' competitor. During this entire process, plaintiffs had never ceased operating the dance club.

The City moved for summary judgment on the ground that plaintiffs were never prevented from operating their teen dance facility and that any property interest plaintiffs may have had were left unfettered by the City's ultimate issuance of the required permit. The Court denied the City's summary judgment motion:

> New Mexico law in general recognizes a judicial remedy for a property owner aggrieved by a fraudulent arbitrary or capricious action of a zoning authority. *See, e.g., Downtown Neighborhoods Association v. City of Albuquerque*, 109 N.M. 186, 783 P.2d 962 (N.M.Ct.App.1989) (N.M.Bar Bulletin, Vol. 28, No. 51 at 755 Dec. 21, 1989). Thus, New Mexico law recognizes that the right of a property owner to use his property for a lawful purpose cannot be restricted for arbitrary and discriminatory reasons by governmental zoning actions. In my view, this right, judicially enforceable under state law, is a "legitimate claim of entitlement" that is constitutionally protected from arbitrary deprivations.

739 F. Supp. at 1468. Thus, in Zaintz, the Town required the recipient to comply with the City's ordinance, i.e., not to not hold teenage dances without obtaining a permit. The Town's actions were improperly motivated, and, on this basis, the Town's conduct deprived the recipient of his property rights in violation of substantive due process, i.e., the right to be free from governmental interference for improper motives. In any case, where the record discloses facts raising an issue of improper or ulterior motive in application of the land use laws, summary judgment is inappropriate.

Like New Mexico law, Connecticut law recognizes the right of a property owner to use his property free from arbitrary and discriminatory governmental action, and a deprivation of that right gives rise to a violation of substantive due process. In Gavlak v. Town of Somers, 267 F. Supp. 2d 214 (D. Conn. 2003), a case in which a C&D was issued in which there was a dispute regarding pre-existing use of land, the Court denied the Town's motion to dismiss the landowner's substantive due process claim:

> The Board's actions and decisions concerning the nonconforming use issue, as alleged, were illegitimate and irrational because they were manifestations of the Board's desire to destroy the plaintiffs' spring water business.

267 F. Supp. 2d at 223. See, Brady v. Town of Colchester, 863 F.2d 205 (2nd Cir. 1988) (C&D); Delguerico v. Springfield Township, 2002 WL 32341774 (E.D.Pa. Nov. 26, 2002) (C&D); Dieterly

v. Sorrenti, 1992 WL 310302 (E.D.Pa. Oct. 22, 1992) (C&D) (all substantive due process violations); Women's Medical Professional Corp. v. Baird, 277 F.Supp. 2d 862 (S.D. Ohio 2003) (C&D; procedural due process deprivation).

In the instant case, Plaintiffs have alleged that the C&D was issued and left in place by the IWWC without the hearing required by law for the illegitimate purposes of coercing Plaintiffs to give up property rights to the Goodspeed Opera House ("GOH"). Defendants have deprived Plaintiffs of their property right to use their land free from improperly motivated governmental interference in the form of an improperly motivated C&D. Such a claim is cognizable under both substantive due process and procedural due process, and, on this record, the Court should vacate the entry of summary judgment for defendants.

In addition, the Court's ruling ignores the factual pleadings in the Complaint and the facts cited in the depositions and other discovery and the reasonable inferences that can be drawn from them. The Complaint, supported by the depositions cited by Plaintiffs, establishes that the Town and the IWWC enforcement officer gave Plaintiffs a ruling that Plaintiffs may cut the trees and vegetation on the airport's property without a permit in order to comply with the 5010 report of the state DOT inspectors to eliminate obstructions from the glide path. This ruling applied to Goodspeed's own property, as well as to the airport's easement on the EHLT property. Ventres admitted he had the authority to make such a ruling. When Goodspeed failed to relinquish certain property rights to the GOH, Ventres, in conspiracy with the EHLT for the purpose of coercing Goodspeed to give up property rights to the GOH, issued a C&D that reversed the previous ruling of law which allowed Goodspeed to cut trees and vegetation on the airport property and on its easement on the EHLT property without a permit.

The entry of the C&D deprived Goodspeed of a pre-existing property right recognized by Ventres—that is, the right arising from the prior ruling by Ventres that Goodspeed may legally, without a permit, cut trees and trim the vegetation on its property and on its easement pursuant to the 5010 report to maintain the airport's glide path free of obstructions. The reversal by Ventres of his prior ruling was motivated by the improper ulterior purpose to get Goodspeed to give up its parking rights to the GOH and was in furtherance of the conspiracy alleged in the Complaint.

Additionally, the C&D deprived the airport of its long-standing historic right to cut the trees and vegetation on its property and on the easement without a permit. The record shows that since 1964, when the airport opened, the airport continuously as needed, openly maintained the flight path by cutting without a permit the trees and vegetation on its property and on the easement. The record shows this cutting occurred before and after the establishment of the IWWC and its regulations. The C&D deprived the airport of this long-standing use of its property. This long-standing, open course of conduct creates a factual issue regarding whether the Town and Ventres recognized this conduct was not "regulated activity."

Independent of any other basis, Defendants' conduct also deprives Goodspeed and its manager (Mellon) of the right to unfettered use of property by imposing on them the burden of proving that use of their property is non-regulated activity, subject to the enhanced penalties of contempt. Plaintiffs, as the recipient of the C&D, would have the burden of proof at a show cause hearing to establish that they were not engaged in regulated activity and were not required to obtain a permit in order to escape contempt for violating the C&D. Town of Ashford v. Wolfe, 2001 WL 984903 (Conn. Super. July 31, 2001). Mellon, as the managing agent of Goodspeed, would likewise to subject to a show cause hearing and contempt. Young v. Young, 1996 WL 38239 (Conn. Super.

Jan. 10, 1996) In contrast, in the absence of a C&D, the IWWC would have to institute an enforcement action where it would have the burden of establishing the existence of regulated activities and there could be no contempt finding or contempt sanctions since there would be no violation of an outstanding order. See, Conn. Gen. Stat. § 22a-44(b).

Under precedent of the Connecticut Courts what constitutes a regulated activity is not clear-cut and is subject to significant dispute. Before issuance of the C&D, Goodspeed could conduct activities on its property under its own good faith interpretation of the regulations. Now, Goodspeed can do nothing on its property without first obtaining a permit because it risks contempt if it is wrong about a complicated legal determination in a show cause proceeding in which it has the burden of proof. A ruling that the C&D is no more restrictive than the regulations themselves is a ruling that the C&D is a pointless act, a conclusion which is contrary to legal process and precedent.

The Court's ruling is also contrary to the position taken by the Town Defendants. They argued the C&D was not a deprivation of property rights solely because it was never affirmed by the IWWC and is no longer in effect. (March 5, 2004 Merrow and Ventres Mem. at 4-5). Their position was that if the C&D was in effect, the C&D deprived plaintiffs property rights.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs Timothy Mellon and Goodspeed Airport, LLC respectfully request that the Court grant their motion for reconsideration of the Court's entry of summary judgment for the Defendants.

Respectfully submitted,

*/s/ Robert M. Disch*
John R. Fornaciari, #04653
Robert M. Disch, #04654
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
1300 I Street, N.W., 11th Floor East
Washington, D.C. 20005
202-218-0000 (phone)
202-218-0020 (fax)

Attorneys for Plaintiffs

Dated: January 13, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum of Plaintiffs in Support of Their Motion for Reconsideration of the Court's Entry of Summary Judgment for the Defendants was served upon the following electronically and by first class mail, postage prepaid this 13th day of January 2005:

>Michael J. Donnelly
>Murtha Cullina, LLP
>City Place I-185 Asylum Street
>Hartford, CT 06103-3469
>
>John S. Bennet
>Kenneth J. McDonnell
>Gould, Larson, Bennet, Wells & McDonnell, P.C.
>35 Plains Road
>P. O. Box 959
>Essex, CT 06426

_____
Robert M. Disch