UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GOODSPEED AIRPORT, LLC, et al.,<br>    Plaintiffs,<br><br>    v.<br><br>EAST HADDAM<br>LAND TRUST, INC., et al.,<br>    Defendants. | CIVIL ACTION NO.<br>3:01cv403 (SRU) |

**RULING ON MOTION FOR RECONSIDERATION**

      Goodspeed Airport, LLC and its owner, Timothy Mellon, (collectively "Goodspeed") ask me to reconsider my decision to grant summary judgment to the defendants, the East Haddam Land Trust and various individuals (collectively "the EHLT"), on Goodspeed's section 1983 claim that a "cease and desist" order issued by the East Haddam Inland Wetlands and Watercourses Commission ("the IWWC") violated Goodspeed's right to due process.  I granted summary judgment after concluding that the cease and desist order issued by the IWWC did not invade any protected property interest of Goodspeed because it merely ordered Goodspeed to refrain from engaging in already prohibited activities.  Goodspeed argues that I overlooked several cases holding that enforcement of a regulation for arbitrary and improper reasons is, standing alone, sufficient grounds for finding a due process violation, even if the enforcement was only against already prohibited activity.  Goodspeed also argues that I overlooked several ways in which the IWWC's cease and desist order prevented it from lawfully using its property. Because I acknowledge that Goodspeed cites cases and portions of the record that I did not consider in my prior ruling, I grant Goodspeed's motion for reconsideration.  On reconsideration, however, I adhere to my original decision.

I.  **Facts**

The following facts are not subject to any genuine dispute, or, if disputed, are construed in the light most favorable to Goodspeed, which was the non-moving party on the summary judgment motion.

Goodspeed Airport is located, in part, on protected wetlands property. It adjoins protected wetlands owned by the EHLT. Since 1964, Goodspeed airport has trimmed trees in a 2.5 acre area of the EHLT land when those trees obstructed the flight path of Goodspeed's runway. As a consequence of those activities, Goodspeed gained a prescriptive easement over those 2.5 acres for the purpose of trimming trees. *See Ventres v. Goodspeed Airport*, 2004 WL 1245908, *13 (Conn. Super. May 21, 2004). James Ventres, the IWWC Enforcement Officer, was aware of Goodspeed's trimming activity and never required Goodspeed to obtain a permit. At one point, Ventres informed Goodspeed that the only authority necessary to trim the trees was a letter from the Connecticut Department of Transportation.

In December 2000, Goodspeed felled numerous trees and shrubs in the 2.5 acres of EHLT land that it had historically been allowed to trim – a process known as "clear-cutting." Subsequently, Ventres issued an oral cease and desist order, which was followed, on January 2, 2001, by a written cease and desist order from the IWWC. The cease and desist order commanded Goodspeed to:

> Cease and Desist from all regulated activity within seventy-five feet of inland/wetlands and watercourses (regulated areas) on your property . . . and adjoining properties . . . .
>
> \*\*\*
>
> "Regulated activity" means any operation within or use of a wetland or

> watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourse . . . .
>
> \*\*\*
>
> Failure to comply with this order will subject you to a penalty of not more than $1,000 for each offense, and each day's continuance of the violation shall be deemed a separate and distinct offense.

The parties do not dispute that the prohibitions of the cease and desist are no broader than the prohibitions set forth in Connecticut statutes[1] and IWWC regulations[2] concerning use of protected wetlands.

The IWWC determined that it could not provide Goodspeed with a hearing on the cease and desist order because it did not possess a quorum of conflict-free members. Consequently, it elected to pursue civil enforcement remedies against Goodspeed in Connecticut Superior Court. On May 21, 2004, the Superior Court issued a decision holding, among other things, that Goodspeed's clear-cutting violated Connecticut law and IWWC regulations. *See Ventres v. Goodspeed Airport*, 2004 WL 1245908 at \*3.

**II.    Discussion**

Goodspeed's principal claim in this litigation is that the cease and desist order deprived it of its right to use its property – the airport and the easement over the 2.5 acres of EHLT land – by prohibiting it from engaging in "regulated activity" without acquiring a permit. Goodspeed claims that deprivation violated procedural due process, because the IWWC never provided it a

---

[1] Connecticut General Statutes section 22a-42 requires municipalities to establish agencies that regulate wetlands and watercourses within their territory in order to effectuate the purposes of Connecticut General Statutes sections 22a-36 to 22a-42.

[2] The IWWC regulations, enacted in accordance with Connecticut General Statutes sections 22a-36 to 22a-42, have not been provided to the court.

hearing, and substantive due process, because the IWWC was motivated by a desire to retaliate against Goodspeed because of a failed business deal.

At oral argument on Goodspeed's summary judgment motion, I held that there was no deprivation of property because the cease and desist order only prohibited Goodspeed from engaging in activities that were already forbidden. In other words, the cease and desist order did not deprive Goodspeed of any *lawful* use of its property. Because I found no constitutional right, I did not reach the question whether the cease and desist order was issued without proper procedure or with improper or arbitrary motives.

      A.     <u>Legal Standard</u>

To establish violations of either procedural or substantive due process a plaintiff must first identify a constitutionally protected right that has been violated. *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (procedural due process); *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999) (substantive due process)  The constitution, of course, protects the right to property, but what constitutes a property interest is ordinarily determined by state law. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Goodspeed identifies its right to use its property for lawful purposes as the property interest allegedly infringed by the defendants. Admittedly, the right to use property for lawful purposes is one of the most fundamental rights protected by our Constitution, but there is no right to unlawfully use one's property. Here, all the cease and desist order did was prohibit Goodspeed from engaging in "regulated activity," i.e., activity already prohibited by statute or regulations – neither of which Goodspeed challenges. In other words, the cease and desist order, by its own terms, only

prohibited Goodspeed from engaging in *unlawful* uses of its property.[3]

Goodspeed argues that many courts have concluded that the issuance of a cease and desist order can violated constitutional rights even if the cease and desist order only requires compliance with pre-existing regulations. That is correct, but in each of those cases the court held that an order, which on its face only proscribed already unlawful conduct, could still violate due process if its effect was indirectly to prohibit some lawful conduct as well.

In *Gavlak v. Town of Somers*, 267 F. Supp. 2d 214 (D. Conn. 2003), the Court concluded that enforcing a pre-existing zoning regulation against the plaintiff infringed the plaintiff's property interest because the plaintiff claimed he had a valid "nonconforming use," which constituted an exception to the zoning regulation. In other words, although the order appeared to merely prohibit what was already prohibited by the statute, it actually had the effect of overriding the plaintiff's legitimate exemption from the statute. *See also Del Guerico v. Springfield Township*, 2002 WL 32341774, *6 (E.D. Pa. Nov. 26, 2002) (finding property interest when plaintiffs alleged that a cease and desist order denied them their grandfathered right to continue their preexisting use of the property).

In *Dieterly v. Sorrenti*, 1992 WL 310302 (E.D. Pa. Oct. 22, 1992), the Court held the issuance of cease and desist orders could violate a plaintiff's right to due process if the orders had the effect of harassing or intimidating the plaintiff into abandoning a lawsuit or of driving the plaintiff out of business. There the right being affected was not the right to engage in the

---

[3] I note that further deterrence of Goodspeed from engaging in *unlawful* activity may, of course, have been exactly what the IWWC wished to accomplish. Accordingly, I do not agree with the suggestion made in Goodspeed's motion papers that my ruling means the cease and desist order was a "nullity." Further deterring already unlawful conduct may be highly effective; it just does not, standing alone, tread on constitutionally protected property rights.

unlawful activity prohibited by the cease and desist order, but the rights that were the object of the harassment, namely, the right to access to the courts or the right to conduct a business.

In *Zaintz v. City of Albuquerque*, 739 F. Supp. 1462 (D.N. Mex. 1990), the Court held that a city's selective enforcement of its zoning regulations violated the plaintiffs' property interest in "commercial use of their property on an equal basis with others engaged in their type of business." In other words, though the Court did not conclude that the plaintiffs had a right to engage in the unlawful activity prohibited by the zoning regulations, it held that they did have a general right to conduct their business free from undue interference, and that right was infringed by the manner in which the regulations were being enforced.

In sum, these cases hold,[4] and I agree, that a cease and desist order can still violate a constitutional right, even if on its face the order merely prohibits unlawful conduct, if the plaintiff establishes that the order nevertheless has the effect of restraining some lawful conduct as well. None of these cases hold that mere issuance of a cease and desist order, without a showing of any effect other than a prohibition of already unlawful activity, constitutes violation of a constitutional right. Accordingly, the question in this case is whether there is any evidence from which reasonable jurors could find that the cease and desist order issued against Goodspeed prevented Goodspeed from engaging in any *lawful* conduct.

---

[4] Goodspeed cites two other cases, but they are not relevant. *Brady v. Town of Colchester*, 863 F.2d 205 (2d Cir. 1988), involved the question whether plaintiffs had a property interest in issuance of a permit. Goodspeed does not claim it ever applied for a permit. *Women's Medical Professional Corp. v. Baird*, 277 F. Supp. 2d 862 (S.D. Ohio 2003), held that a doctor had a property interest in being able to continue his business. Goodspeed does not claim it was ever unable to operate the airport.


B.     Effect on Goodspeed's Lawful Conduct

Goodspeed claims that the evidence, viewed in its favor, indicates that the cease and desist order, despite mimicking the language of the IWWC regulations, nevertheless restricted Goodspeed's lawful conduct in three ways: (1) by depriving Goodspeed of an exception to the regulations that had been granted to it by the IWWC; (2) by depriving Goodspeed of its historic right to trim trees; and (3) by increasing the penalties Goodspeed faced for conducting regulated activity, thereby "chilling" Goodspeed's performance of permissible activities.

1.     *IWWC Exemption*

Goodspeed contends that the IWWC, through Ventres, its enforcement officer, gave Goodspeed a "ruling" that it did not need a permit to trim trees. That ruling Goodspeed claims, created a property interest that was violated by the cease and desist order. I have no trouble assuming that, under some circumstances, an exemption from environmental laws can constitute a property interest, but in this case, even construing the evidence in the light most favorable to Goodspeed, it is not possible that reasonable jurors could find Goodspeed possessed such an exemption.

At most, the evidence indicates that Ventres was aware of Goodspeed's tree trimming and never required it to apply for a permit, and, on one occasion, Ventres informed Mellon that "the only authority Goodspeed LLC needed to cut trees to conform with FAA safety regulations was a letter from the Connecticut DOT." Mellon Aff. ¶ 11. None of that evidence is sufficient to establish that Goodspeed was granted an allowance to trim trees in spite of the prohibition on conducting regulated activity without a permit. First, there is no evidence that Ventres was authorized to issue exemptions to state or local wetland regulations. Second, even if he was, the

evidence does not suggest he did so in this case. Read in Goodspeed's favor, the evidence only indicates that Ventres gave his – incorrect – opinion that the regulations did not apply to Goodspeed's activities. He did not issue Goodspeed an exemption from the regulations. Ventres's opinion might give Goodspeed a claim of municipal estoppel[5] were an action to be brought against it for its tree trimming activities,[6] but it does not create a constitutionally protected property interest.

2.   *Historic Right*

Goodspeed next claims that, regardless of Ventres's opinion, its historic trimming of trees in protected wetlands gave it a "vested right" to continue to trim such trees even if the trimming was a "regulated activity." In other words, Goodspeed is claiming that it possessed the environmental equivalent of what is referred to in the zoning context as a "preexisting non-conforming use." There is certainly case law holding that a preexisting non-conforming use can constitute a constitutionally protected property interest. *See Gavlak*, 267 F. Supp. 2d at 214. The essential prerequisite to protection of such an interest, as with almost all property interests, is that the interest be recognized by state law. Although Connecticut does recognize the validity of nonconforming use rights in the zoning context, there is no authority that suggests it recognizes a right to continue preexisting regulated activity on protected wetlands. On the contrary, in Goodspeed's related state court proceedings, the Superior Court held:

---

[5] Municipal estoppel can prevent an agency from enforcing its regulations against a particular violation when that violation is the result of representations made by one of the agency's officers. *Zoning Commission v. Lescynski*, 188 Conn. 724, 731-32 (1982).

[6] To date no such action has been brought. The action in Connecticut Superior Court only involved Goodspeed's clear-cutting activities, not its trimming.

> Neither the statute nor the local regulations include a grandfather provision exempting tree cutting in a floodplain forest simply because, before 1974, that activity did or could lawfully occur without a permit.

*Ventres*, 2004 WL 1245908, * 6.

    3.    *Chilling Effect*

Finally, Goodspeed argues that the cease and desist order, even if it only prohibits activity that is already unlawful, nevertheless violates Goodspeed's rights because the increased penalties associated with violating a cease and desist order, as opposed to only violating a statute or regulation, have a "chilling" effect. Assuming that Goodspeed would suffer increased penalties for violating a cease and desist order,[7] there is some merit to this argument.

It is likely that all but the most precisely drafted of legal proscriptions deter not only unlawful conduct but some lawful conduct as well. The cautious citizen, faced with an ambiguous prohibition, will avoid not only conduct that is clearly unlawful but also conduct that is only potentially unlawful, and, as a consequence, will refrain from conduct that, as it turns out, is permissible. How much permissible conduct is restrained by a given prohibition will depend on a number of things, for example, the clarity of the language used in the prohibition and the cautiousness of the particular person, but one thing that is likely to affect the amount of restrained, permissible conduct is the penalty imposed. A prohibition that subjects violators to only a minor penalty will deter much less permissible conduct than a regulation with a stricter penalty, because the consequences of misinterpretation in the former case are less severe than in

---

[7] Goodspeed does not contend that the order explicitly increases the penalties for a violation. Rather, Goodspeed argues that the order subjects it to potential contempt of court sanctions and places on Goodspeed the burden of proving its innocence, should the IWWC claim a violation.

the latter. Consequently, I can easily imagine that a cease and desist order, if it actually increased the penalty for a violation, would have the indirect effect of increasing the amount of lawful conduct that the recipient of the order would, out of caution, refrain from undertaking. Accordingly, if the cease and desist order was issued without proper procedure, or in some other constitutionally impermissible way, there could be a due process violation – not because the order explicitly prohibited *unlawful* conduct but because it increased the amount of restrained *lawful* conduct.

Nevertheless, despite the legal plausibility of Goodspeed's argument, it does not apply in this case for factual reasons. Goodspeed has not identified or provided evidence of[8] any instances where it was chilled from undertaking lawful conduct that it would have undertaken if only the state law and local regulations, but not the cease and desist order, were in place. The only statement by Goodspeed that gives any indication of what lawful activity it may have refrained from undertaking is a statement in its brief where Goodspeed claims that it "can do nothing on its property without first obtaining a permit" because of its fear of the increased penalties of the cease and desist order. That statement, however, is not only unsupported by any evidence in the record but appears highly improbable given that the Goodspeed Airport is still in business. Accordingly, there is no evidence from which reasonable jurors could conclude that the additional penalties imposed by the cease and desist order prevented Goodspeed from

---

[8] Goodspeed's complaint of lack of discovery, which it raised at summary judgment, has no bearing on this point. Evidence of what Goodspeed did or did not do is evidence within Goodspeed's own control and therefore not a subject on which it requires discovery.

undertaking any lawful conduct.[9]

**III.   Conclusion**

Because Goodspeed points to no evidence from which reasonable jurors could find that the cease and desist order issued by the IWWC either directly or indirectly restrained Goodspeed from any lawful use of its property, I conclude that my original grant of the defendants' motion for summary judgment was correct.

Goodspeed's motion for reconsideration (doc. # 111) is GRANTED, but on reconsideration the court's previous ruling stands.

It is so ordered.

Dated at Bridgeport, Connecticut, this 13th day of June 2005.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

---

[9] It is not entirely clear from its papers whether Goodspeed believes that trimming trees – as opposed to clear-cutting – is a "regulated activity."  Even assuming it is not, there is no evidence in the record that Goodspeed has, since the issuance of the cease and desist order, ever needed to trim trees, let alone been afraid to do so because of the cease and desist order.